# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### HELENA DIVISION

HOLGAR MEYER,

                Plaintiffs,

vs.

INTREPID CREDIT UNION,

                Defendant.

**CV-25-37-H-BMM**

**ORDER ON
MOTION TO DISMISS**

## INTRODUCTION

Intrepid Credit Union ("Intrepid") moves to dismiss Plaintiff Holgar Meyer's ("Meyer") putative class action complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 8.) Meyer alleges violations of the Electronic Fund Transfer Act of 1978 ("EFTA") and Regulation E in the complaint. (Doc. 1.) Meyer also alleges a claim for unjust enrichment against Intrepid in the alternative. (*Id*.) The Court denies the motion.

## BACKGROUND

1

Intrepid is a federal credit union with locations and customers in Montana. (Doc. 30 at 2.) Intrepid offers its customers banking services. (*Id*.) Meyer holds a checking account with Intrepid. (Doc. 30 at 2.) Meyer is enrolled in Intrepid's overdraft protections service for one-time debit card and ATM transactions. (*Id*.)

The Board of Governors of the Federal Reserve System ("Board") created Regulation E Model Form-A9 in 2009. 74 Fed. Reg. 59,033, 59,036. Model Form-A9 provides a template of an overdraft agreement "that institutions may use to satisfy the notice requirement" of EFTA and Regulation E. *Id*. Intrepid modeled its overdraft service agreement after Model Form-A9. (Doc. 9 at 7.)

Debit card transactions follow a two-step process: (1) authorization and (2) settlement. (Doc. 9 at 4.) A seller first authorizes a purchase by swiping the debit card of a consumer. (*Id*.) The purchase places a hold on the consumer's account. (*Id*.) The hold reduces the account's available balance but does not affect the account's actual balance. (*Id*.) The seller next settles the transaction by requesting payment from the consumer's financial institution. (*Id*.) This process creates a gap of time between authorization and settlement. (*Id*. at 8–9.) An account's available balance may differ from its actual balance during this period. (*Id*.)

Financial institutions assess overdraft fees in two methods. The first method uses an account's available balance. The second method uses an account's actual balance. Intrepid uses the available balance method. (Doc. 9 at 9.) Intrepid discloses

its method of assessing overdraft fees in its account agreement rather than in its opt-in agreement. (*Id*.) The account agreement details scenarios in which the available balance method may result in excess overdraft fees to the consumer. (*See id*. at 11.)

Meyer filed a putative class action complaint against Intrepid on April 22, 2025. (Doc. 1.) The complaint alleges that Intrepid violated the notice and affirmative consent requirements of the EFTA and Regulation E. (Doc. 1 ¶¶ 91–105, citing 15 U.S.C. § 1693 and 12 C.F.R. § 1005.) The complaint further alleges, in the alternative, that Intrepid's policy unjustly enriched Intrepid at the expense of Meyer. (Doc. 1 ¶¶ 106–110.) Intrepid filed a motion to dismiss the putative class action complaint on June 18, 2025. (Doc. 8.)

## LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires claimants to include in their complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint under the plausibility pleading standard of Rule 8(a)(2). *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal proves appropriate under Rule 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. *Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A court may dismiss a complaint "based on the lack of a cognizable legal theory or the absence of sufficient facts

alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

A complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face to survive a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim proves plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard does not require probability, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A court must "take[] as true and construe[] in the light most favorable to plaintiffs" all factual allegations set forth in the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted).

## DISCUSSION

Intrepid moves for dismissal of the complaint for failure to state a claim for relief under EFTA and Regulation E. (Doc. 8.) Intrepid argues that dismissal proves warranted as its decision to model its opt-in agreement after Model Form A-9 satisfies EFTA and Regulation E requirements. (Doc. 9 at 13, 20.) Intrepid further argues that the safe harbor provision shields it from liability for any alleged failure to notify under EFTA and Regulation E. (*Id*. at 23.) Lastly, Intrepid asserts that

Meyer failed to plead a plausible allegation of unjust enrichment. (*Id*. at 24.) The Court discusses each issue in turn.

### I.    Whether Intrepid's Opt-in Agreement Comports with the Requirements of the EFTA

Intrepid argues that EFTA and Regulation E do not require an overdraft agreement to disclose *how* institutions assess overdraft fees but rather simply must disclose whether a transaction *can* incur an overdraft fee. (Doc. 26 at 5). Intrepid points to the history of Regulation E as described in a footnote of *Chambers v. Nasa Federal Credit Union* to support its position. (Doc. 26 at 7, citing 222 F. Supp. 3d 1, 15 n.12 (D. D.C. 2016).)

The primary question in *Chambers* involved whether a financial institution had "failed to secure [the plaintiff's] affirmative consent to participate in its overdraft program, in violation of Regulation E." 222 F. Supp. 3d at 15. The financial institution used the overdraft language provided in Model Form A-9 in its opt-in agreement. *Id*. The plaintiff argued that "the opt-in notice did not describe [the financial institution's] overdraft service because, instead of assessing overdraft fees based on the ledger-balance method, its service is based on the available-balance method." *Id*. at 15. The court declined to review this issue. *Id*. at 16. The plaintiff's claims in the alternative proceeded instead. *Id*. The court noted, however, that a financial institution's overdraft notice must be "substantially similar" in content and format to Model Form A-9. *Id*. at 15 (citing 12 C.F.R. § 1005.17(d)). "The regulation

itself prohibits the inclusion of 'information not specified or otherwise permitted by' the regulation's terms." *Id*. at 15 n.2 (citing 12 C.F.R. § 1005.17(d)).

*Chambers* proves unpersuasive in the context of the claims before the Court. "In discerning the meaning of regulatory language, [a Court's] task is to interpret the regulation as a whole, in light of the overall statutory and regulatory scheme, and not to give force to one phrase in isolation." *Safari Club Int'l v. Haaland*, 31 F.4th 1157, 1172 (9th Cir. 2022) (citation omitted). *Chambers* ends its analysis before Regulation E's required content and format. 222 F. Supp. 3d at 15 n.2 (citing 12 C.F.R. § 1005.17(d)). Regulation E requires that a notice provide "a brief description of the financial institution's overdraft service and the types of transactions for which a fee or charge for paying an overdraft may be imposed, including ATM and one-time debit card transactions." § 1005.17(d)(1).

Meyer alleged during the motion hearing that Intrepid may fulfill Regulation E's notice requirements simply by providing a "brief description" of its overdraft service. § 1005.17(d)(1). Given the "overall statutory and regulatory scheme" of Regulation E, Meyer's contentions fit within the regulation's language and requirements. *Safari Club Int'l*, 31 F.4th at 1172. This fact distinguishes Meyer's claims from the plaintiff in *Chambers* who failed to demonstrate how a more extensive description of the overdraft service fits within the content and format

requirements of Regulation E. 222 F. Supp. 3d at 15. Intrepid's claims fail when interpreting the history and purposes of Regulation E and EFTA as well.

Intrepid fails to demonstrate why Meyer's claims should be dismissed at this stage of litigation based on the history of EFTA and Regulation E. Congress enacted EFTA to protect consumer rights. 15 U.S.C. § 1693. "EFTA is [a] 'remedial consumer protection statute' which [courts] 'read liberally to achieve' the goal of protecting consumers." *Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 239 (4th Cir. 2019). EFTA "establishes the rights, liabilities, and responsibilities of consumers in electronic fund transfer (EFT) systems." 74 Fed. Reg. 59,033, 59,033 (Nov. 17, 2009). Meyer's claims involve an alleged violation of EFTA and Regulation E as a consumer of Intrepid's retail banking services. (Doc. 1 at ¶¶ 6, 8). Meyer alleges that "EFTA . . . is intended to protect individual consumers engaging in electronic fund transfers." (*Id*. at ¶ 12.) These allegations also fit within the purposes and history of Regulation E and EFTA. 15 U.S.C. § 1693; *see also Curtis*, 915 F.3d at 239.

## A. Whether Intrepid Satisfied the Notice and Affirmative Consent Requirements of EFTA and Regulation E

EFTA and Regulation E require financial institutions to seek the "affirmative consent" of consumers before enrollment in an overdraft service. 74 Fed. Reg. 59,033, 59,036 (Nov. 17, 2009) (codified at 12 C.F.R. § 205.17). Institutions must

give written notice to consumers to obtain proper consent. 12 C.F.R. § 205.17(b)(1)(i). A financial institution's notice must describe overdraft policies in a "clear and readily understandable manner." *Fludd v. South State Bank*, 566 F. Supp. 3d 471, 476 (D.S.C. 2021) (citing 12 C.F.R. § 1005.4(a)(1)).

Courts have found the language of "enough money in your account" to be "ambiguous because it could describe either the available or the ledger balance calculation method." *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1238, 1243–44 (11th Cir. 2019). For example, the court in *Fludd* determined that the plaintiffs plausibly alleged a "Regulation E violation because the Opt-in Agreement state[d] that an overdraft 'occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway.'" 566 F. Supp. 3d at 483. The plaintiff argued that the language failed to describe the financial institution's overdraft services in a "clear and readily understandable manner." *Id*. at 480. The phrase "enough money in your account" plausibly could "not match the reality of the available balance accounting method." *Id*.

Meyer similarly alleges that the phrase "enough money in your account" fails to satisfy the notice and affirmative consent requirements of Regulation E. (Doc. 1 ¶¶ 93 – 98.) The overdraft service agreement states that "an overdraft occurs when you do not have *enough money* in your account to cover a transaction, but we pay it anyway." (Doc. 1-1) (emphasis added). Meyer contends that the phrase "enough

8

money" in the overdraft service agreement proves ambiguous. Meyer argues, as a result, that the agreement fails to detail in a "clear and readily understandable manner" how Intrepid assesses overdraft fees. (Doc. 1 ¶¶ 59–60, 97.) Meyer's allegations prove sufficient to withstand Intrepid's motion to dismiss. *Fludd*, 566 F. Supp. 3d at 483.

Meyer also alleges that the overdraft agreement must serve as a standalone document separate from Intrepid's account agreement. (*Id*. ¶ 94.) This claim also survives the motion to dismiss. Regulation E requires notices to serve as "stand-alone documents." *Id*.; *see also* 12 C.F.R. § 1005.17(b)(1)(i) ("Provides the consumer with a notice in writing . . . segregated from all other information.). Intrepid may not rely on its account disclosure agreements to satisfy the notice and affirmative consent requirements of the EFTA and Regulation E.

## II.    Whether Intrepid Can Claim Safe Harbor

Intrepid contends that its verbatim use of Model Form A-9 insulates it from liability under EFTA and Regulation E. (Doc. 9 at 22.) Meyer contends that the safe harbor provisions of EFTA and Regulation E fail to insulate Intrepid from liability as Meyer challenges the substance of the notice provided by Intrepid Credit Union. (Doc. 23 at 28.) The safe harbor provision provides immunity from civil liability under EFTA and Regulation E in two circumstances. 1693m(d)(1)–(2).

First, the provision protects institutions from actions made "in good faith in conformity with any [Board] rule, regulation, or interpretation." § 1693m(d)(1). Second, the provision protects institutions from "any failure to make disclosure in proper form if a financial institution utilized an appropriate model clause issued by the Board" unless a court determines the model clause to be invalid. 15 U.S.C. § 1693(m)(d)(2). Courts have interpreted the second circumstance to mean that the safe harbor provision insulates "institutions from liability for violations arising from the form of notice provided but not from inaccurate or misleading content of the notice." *Walbridge v. Northcoast Credit Union*, 299 F. Supp. 3d 338, 349 (D. N.H. 2018).

For example, in *Pinkston-Poling v. Advia Credit Union*, a financial institution argued that its use of a model disclosure form shielded it from liability under the "safe harbor" provision. 2017 WL 5153218, at *2 (W.D. Mich. Apr. 20, 2017). The court determined that the "safe harbor provision does not bar claims based on the content or substance—as opposed to the form—of a Regulation E notice." *Id.* The court reasoned that "an institution 'is protected from liability for failure to make disclosures in proper form,' [] only if the 'institution uses [the form] accurately to reflect its service." *Id.* at *2 (citing 12 C.F.R. pt. 1005 Supp. I.).

The safe harbor provision fails to insulate Intrepid from civil liability under EFTA and Regulation E. Meyer alleges that Intrepid failed to "provide its customers

10

with a 'clear and readily understandable' description of the overdraft program."
(Doc. 1 ¶ 97, citing 12 C.F.R. § 1005.17.) Meyer's allegations amount to a challenge
to the substance of the form as Meyer contends that Intrepid's form fails to "reflect
its services accurately." *Pinkston-Poling*, 2017 WL 5153218 at *2 (cleaned up).
Intrepid may not use the safe harbor provision as a defense because Meyer
challenges the adequacy of the "content of the notice." *Walbridge*, 299 F. Supp. 3d
at 349. The complaint survives Intrepid's motion to dismiss on this basis.

### III.    Whether Meyer States a Claim for Unjust Enrichment

Intrepid contends that Meyer failed to plead a claim for unjust enrichment as
Meyer argues that he solely pleaded his unjust enrichment claim in the alternative.
(Doc. 1 ¶ 107; Doc. 23 at 26.) Federal Rule of Civil Procedure 8(a)(3) allows parties
to plead claims in the alternative. *See Lindstrom v. Polaris Inc.*, 2024 WL 4237732,
at *6 (D. Mont. Aug. 9, 2024). Dismissal of Meyer's unjust enrichment claims
proves unwarranted on that basis.

### CONCLUSION

The Court denies Intrepid's motion to dismiss. (Doc. 8.) Meyer's complaint
satisfies the requirements of Federal Rule Civil Procedure 12(b)(6). Meyer has
plausibly alleged claims under the EFTA and Regulation E. Meyer also plausibly
pleaded unjust enrichment in the alternative.

**ORDER**

Accordingly, **IT IS ORDERED** that Intrepid's Motion to Dismiss (Doc. 8)

is **DENIED**.

DATED this 5th day of November, 2025.


_____

Brian Morris, Chief District Judge
United States District Court